1  GIBSON, DUNN & CRUTCHER LLP
   MICHAEL A. SITZMAN, SBN 156667
2  MSitzman@gibsondunn.com
   ETHAN D. DETTMER, SBN 196046
3  EDettmer@gibsondunn.com
   One Montgomery Street
4  San Francisco, California 94104
   Telephone: (415) 393-8200
5  Facsimile: (415) 986-5309

6  Attorneys for Plaintiff and Subpoenaing Party
   CADENCE DESIGN SYSTEMS, INC.

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re:<br><br>AMMOCORE TECHNOLOGY INC.,<br><br>Debtor.<br><br>―――――――――――――――<br><br>CADENCE DESIGN SYSTEMS, INC.<br><br>Plaintiff,<br><br>v.<br><br>ATHANASSIOS KATSIOULAS, an individual; ATHANASSIOS KATSIOULAS and ALAN ARNOFF, as purported directors; AMMOCORE TECHNOLOGY INC., a Delaware corporation; and MONTAGUE S. CLAYBROOK, as Chapter 7 Trustee<br><br>Defendants | CASE NO. C 07 80200-MISC SI<br>[Bankr. D. Del. No. 06-10318 (PJW);<br>Adv. Proc. No. 07-50950]<br><br>CADENCE DESIGN SYSTEMS, INC.'S REPLY MEMORANDUM IN SUPPORT OF MOTION TO COMPEL COMPLIANCE WITH SUBPOENAS ISSUED TO PERKINS COIE LLP AND PAUL LIPPE |

Gibson, Dunn & Crutcher LLP

CADENCE DESIGN SYSTEM, INC.'S REPLY IN SUPPORT OF MOTION
TO COMPEL COMPLIANCE WITH SUBPOENAS                          Case No. C 07 80200-MISC SI

# TABLE OF CONTENTS

Page

I. INTRODUCTION ................................................................................................................. 1

II. ARGUMENT ......................................................................................................................... 2

    A. Katsioulas's Story That The Lippe Report Was Never Meant To Be Privileged Cannot Be Squared With The Lippe Report Itself, Or Other Communications. ....................................................................................................... 3

    B. If The Lippe Report Was Never Meant To Be Privileged, Then Katsioulas Is Abusing The Privilege By Trying To Use It As Both A "Sword" And A "Shield." .................................................................................... 7

III. CONCLUSION ..................................................................................................................... 8

i

CADENCE DESIGN SYSTEM, INC.'S REPLY IN SUPPORT OF MOTION
TO COMPEL COMPLIANCE WITH SUBPOENAS                    Case No. C 07 80200-MISC SI

Gibson, Dunn &
Crutcher LLP

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Chevron Corp. v. Pennzoil Co.*,
　974 F.2d 1156 (9th Cir. 1992) .................................................................................................. 7, 8

*Data Central v. U.S. Dept. of Air Force*,
　566 F.2d 242 (Fed. Cir. 1977) ...................................................................................................... 3

*In re Fischel*,
　557 F.2d 209 (9th Cir. 1977) ........................................................................................................ 3

*In re Subpoenas Duces Tecum*,
　738 F.2d 1367 (D.C. Cir. 1984) ............................................................................................... 7, 8

ii

Gibson, Dunn & Crutcher LLP

CADENCE DESIGN SYSTEM, INC.'S REPLY IN SUPPORT OF MOTION
TO COMPEL COMPLIANCE WITH SUBPOENAS　　　　　　　　　Case No. C 07 80200-MISC SI

Plaintiff Cadence Design Systems, Inc. ("Cadence") respectfully submits this reply memorandum in support of its motion to compel compliance with the subpoenas Cadence issued from this District to Perkins Coie LLP ("Perkins Coie") and Perkins Coie attorney Paul Lippe.[1]

**I.     INTRODUCTION**

Perkins Coie, Paul Lippe, and their clients (including Mr. Katsioulas), waived the attorney-client privilege and work product protection in connection with Mr. Lippe's investigation and analysis of purported legal claims of AmmoCore Technology, Inc. ("AmmoCore") against Cadence. Their comprehensive waiver was accomplished when Mr. Lippe's memorandum to his clients, detailing his investigation, analysis, conclusions and recommendations regarding those purported claims, was sent to Cadence, many members of the press (one of whom wrote an article based on it) and numerous others. It was further confirmed when Mr. Lippe made a presentation to Cadence's outside lawyers detailing Cadence's purported liability to Mr. Lippe's clients.

Mr. Katsioulas opposes this showing of waiver with only one argument: Mr. Lippe's widely-disseminated legal memorandum was, according to Mr. Katsioulas and Mr. Lippe, never meant to be a confidential attorney-client communication in the first place, and therefore it was not a privileged attorney-client communication. For that reason, the argument goes, its dissemination did not create a waiver of the privilege. But this argument is neither factually credible nor legally tenable.

*Factually*, Mr. Lippe's sworn statement that he never intended the Lippe Report to be confidential or privileged is belied by the document itself, and by the contemporaneous communications attached to the Declaration of Michael A. Sitzman filed along with Cadence's motion to compel. Indeed, Mr. Lippe himself acknowledges in his declaration that his legal memorandum was "marked that it was an attorney-client communication." Declaration of Paul Lippe ("Lippe Decl."), ¶ 11. Mr. Lippe's claim that he did not intend the Lippe Report to be privileged simply cannot be squared with the fact that the document is a memorandum from a lawyer to his clients setting forth in detail his investigation, analysis, conclusions and recommendations regarding

---

[1] The only response to Cadence's motion to compel was filed by Athanassios Katsioulas, one of the clients of Perkins Coie and Mr. Lippe. No response was filed by the subpoena recipients.

1

CADENCE DESIGN SYSTEM, INC.'S REPLY IN SUPPORT OF MOTION
TO COMPEL COMPLIANCE WITH SUBPOENAS                                            Case No. C 07 80200-MISC SI

Gibson, Dunn & Crutcher LLP

potential legal claims. Nowhere in the Opposition does Mr. Katsioulas explain why, if he intended the Lippe Report to be so widely disseminated, he had it drafted to look exactly like an attorney-client privileged legal analysis memorandum. This is an after-the fact justification, created to avoid what is otherwise a clear waiver.

*Legally*, Mr. Katsioulas' tactics are a classic example of an unfair and improper attempt to use the attorney-client privilege as both a "sword" and a "shield." Regardless of whether Mr. Katsioulas and his lawyer are telling the truth that the Lippe Report was never meant to be confidential and privileged, there is no question that Mr. Katsioulas used the Lippe Report to try to force a favorable settlement of AmmoCore's purported claims against Cadence. He did so by sending the document to Cadence and its officers and directors, as well as to members of the media and many others in Cadence's industry. Indeed, if the story presented in the Opposition is true, the logical explanation of why Messrs. Katsioulas and Lippe would send the Lippe Report in the form of a confidential attorney-client communication, is to increase the credibility and persuasiveness of the document with the veneer of objectivity, and thereby strengthen their settlement demand. But they cannot be allowed to improperly use the attorney-client privilege to their advantage to improve their bargaining position in settlement discussions, and then hide behind the privilege when their litigation positions are tested in discovery. Given that this is a "lose-lose" situation for him, Mr. Katsioulas does not attempt to address any of the authorities set forth in Cadence's motion to compel prohibiting the use of the privilege as both a "sword and shield," regardless of the privilege-holder's intent.

## II.    ARGUMENT

Mr. Katsioulas' Opposition does not address the bulk of the arguments set forth in Cadence's motion to compel. Mr. Katsioulas does not, for instance, argue that the scope of waiver should be limited in any way or that the requested documents and testimony are protected from disclosure by the settlement privilege. He addresses the waiver of the work product protection in only the most cursory fashion (Opposition, p. 8), and does not specifically address any of the arguments Cadence made with respect to work product waiver (Motion to Compel, pp. 13-15). Significantly, Mr. Katsioulas fails to cite any legal authority remotely supporting the argument he advances.

Gibson, Dunn & Crutcher LLP

2

CADENCE DESIGN SYSTEM, INC.'S REPLY IN SUPPORT OF MOTION
TO COMPEL COMPLIANCE WITH SUBPOENAS                              Case No. C 07 80200-MISC SI

The only legal authorities Mr. Katsioulas cites in his Opposition are for a definition of privilege (Opposition, pp. 4-5), and two cases that he says stand for the proposition that "when a legal opinion does not encompass confidences from the client on which legal advise is based, the court's [*sic*] will require disclosure of the attorney's opinion because it is not privileged." *Id*. at p. 8, *citing Data Central v. U.S. Dept. of Air Force*, 566 F.2d 242, 253 (Fed. Cir. 1977); *In re Fischel*, 557 F.2d 209, 212 (9th Cir. 1977). Because the Lippe Report is based on information provided, at least in part, by Mr. Lippe's clients (Sitzman Decl., Ex. 1 at 1), Mr. Katsioulas is apparently contending that the communications between Mr. Lippe and his clients regarding AmmoCore's potential claims against Cadence were not confidential. But these are the very communications that are being sought through this motion to compel! If they are not confidential, then there is no basis whatsoever for *any* assertion of privilege over communications regarding that subject matter, and the motion should be granted on these grounds, as well as those set forth below.

**A.    Katsioulas's Story That The Lippe Report Was Never Meant To Be Privileged Cannot Be Squared With The Lippe Report Itself, Or Other Communications.**

Mr. Katsioulas states that "Cadence provides the Court with no evidence, nor can it, that the Lippe Report was originally intended to be a confidential communication between Lippe and his client." Opposition, p. 5. But Cadence did discuss evidence—email from Mr. Lippe as well as the Lippe Report itself—demonstrating that the Lippe Report was intended to be confidential. Motion to Compel, pp. 11-12, citing Sitzman Decl., Exs. 1, 5 & 6. Indeed, Mr. Katsioulas admits as much. Specifically, he admits that Cadence pointed to the notation at the top of two versions of the Lippe Report that the document was "MADE AVAILABLE TO CADENCE AS A COURTESY, NOT IN WAIVER OF ATTORNEY-CLIENT PRIVILEGE." Opposition, p. 5.; *compare* Declaration of Michael A. Sitzman ("Sitzman Decl."), Exs. 5 & 6.

Mr. Lippe explains, as follows, why the Court should find that this bolded language did not indicate that the Lippe Report was privileged:

> When the report was given to Cadence and its lawyers, *it was marked that it was an attorney-client communication*. In so marking the report and providing it to Cadence, *I was intending that there was no waiver of the attorney-client privilege* of communications between Mr. Katsioulas and myself. In short, that language was placed on the report in an effort to avoid the very issue and argument that Cadence has now raised. *I wanted to make sure that Cadence understood that there was no waiver*

3

CADENCE DESIGN SYSTEM, INC.'S REPLY IN SUPPORT OF MOTION
TO COMPEL COMPLIANCE WITH SUBPOENAS                              Case No. C 07 80200-MISC SI

Gibson, Dunn & Crutcher LLP

*of the privilege*, *but that no claim to privilege was being made with respect to the report* which report was always intended to be provided to Cadence with the hope of producing a settlement dialogue.

Lippe Decl., ¶ 11 (emphases added). Thus, Mr. Lippe apparently caused the document to be "marked that it was an attorney client communication" when it was given to Cadence, because he "wanted to make sure that Cadence understood that there was no waiver of the privilege," and at the same time, that "no claim of privilege was being made with respect to the report." *Ibid*. Mr. Lippe demonstrates, in this paragraph, the difficulty of explaining why a waiver is not, in fact, a waiver. What is clear, however, is that the document "was an attorney client communication" *and* that "no claim of privilege was being made" with respect to it.

Privilege waivers do not get much more clear than that.

The only explanation offered by Mr. Katsioulas (other than pointing to Mr. Lippe's declaration) is that "Lippe was an extremely seasoned lawyer with 23 years of experience and he would not have given what was supposed to be a confidential report to somebody other than his client and certainly would not have allowed his client to widely disseminate the report if it was meant to be a confidential communication between him and his client." Opposition, p. 5. But this is no explanation at all. The privilege belonged to Mr. Katsioulas and the purported board of AmmoCore—not to Mr. Lippe. Thus, Mr. Katsioulas and Mr. Aronoff, as Mr. Lippe's clients, apparently decided to waive the privilege and disseminate the Lippe Report to the world, even if (as Mr. Katsioulas implies) Mr. Lippe urged them not to do so. Mr. Katsioulas' declaration is silent about his intentions regarding the privilege.

Further, if Mr. Lippe's intention had truly been to present AmmoCore's purported claims against Cadence in an effort to settle those claims favorably, he could easily have written a letter to Cadence or "to whom it may concern" that did not explicitly recite his clients' communications to him or his legal advice and recommendations to his clients. Or he simply could have written a demand letter to Cadence or its officers and directors on his clients' behalf. *Compare* Sitzman Decl., Ex. 1, *with* Declaration of Athanassios Katsioulas ("Katsioulas Decl."), Ex. C.

Indeed, Mr. Lippe states in his declaration that the Lippe Report was "similar to a demand letter, a settlement proposal identifying the strength's of one's claims and the weaknesses of the other

4

Gibson, Dunn & Crutcher LLP

CADENCE DESIGN SYSTEM, INC.'S REPLY IN SUPPORT OF MOTION
TO COMPEL COMPLIANCE WITH SUBPOENAS                    Case No. C 07 80200-MISC SI

parties [*sic*] positions, a mediation brief or any of the myriad ways lawyers must communicate with their adversaries to seek negotiated resolutions of claims." Lippe Decl., ¶ 12. But even the briefest perusal of the Lippe Report makes plain that it is no demand letter or mediation brief.[2] A demand letter is a piece of advocacy, explaining why one's opponent must pay money or give other relief. It tells one side of the story and does not purport to be an objective presentation of all relevant facts. It is not addressed to the client (*compare*, Sitzman Decl., Ex. 1, p. 1), it does not recite that it is based on the clients' communications regarding the underlying facts (*ibid*. (Lippe Report is "based on the facts as you [Lippe's clients] have represented them")), nor does it lay out the lawyer's recommendations to his clients (*id*., at p. 3).

An attorney's legal memorandum to his client "represent[ing his] legal analysis and general conclusions, based on the facts as [the client has] represented them or as [the lawyer] independently ascertained" (Sitzman Decl., Ex. 1 at p. 1), is supposed to be an *objective* opinion of both the strengths *and* the weaknesses of the client's position, along with candid advice about a recommended course of action. An experienced attorney like Mr. Lippe was surely aware that sending a document purporting to be a confidential attorney-client communication would have far more potential impact than a typical, advocacy-type demand letter. If it is indeed true that Messrs. Lippe and Katsioulas never meant the Lippe Report to be confidential, the only logical explanation for the Lippe Report to be put in the form it was, as opposed to being in the form of a demand letter or other advocacy-type document, is that they believed that the veneer of objectivity that goes with an attorney-client analysis memorandum would increase the credibility and therefore the value of their demands. As explained in section II.B., *infra*, this is a wholly improper use of the attorney-client privilege.

Finally, the "[o]ther facts" that Katsioulas relies on to show "that neither Lippe nor his client intended or treated the Lippe Report as a confidential communication" (Opposition, p. 5) do not show anything about Mr. Lippe's or Mr. Katsioulas' intent.

---

[2] Mr. Katsioulas was surely aware of what a demand letter looks like, as his prior counsel had sent one to Cadence regarding the same claims about a year earlier. Sitzman Decl., Ex. 3. A comparison of the Lippe Report and the earlier demand letter from Mr. Katsioulas' prior counsel, demonstrates that the Lippe Report bears no resemblance to a demand letter. *See also*, Katsioulas Decl., Ex. C.

5

- The first two items that Mr. Katsioulas cites – a news item in which Alan Aronoff is quoted as saying that the purported AmmoCore Board has "chartered Paul Lippe to report on the condition of [AmmoCore]," and an email from Mr. Lippe stating that he "has been investigating the condition of [AmmoCore]" (*id.* at pp. 5-6) – simply do not say anything about whether the contents and detailed conclusions of Mr. Lippe's report would be shared outside the attorney-client relationship. They simply confirm the fact that Mr. Lippe was engaged to conduct an investigation.

- The third item that Mr. Katsioulas cites is a demand letter from Mr. Lippe to Cadence's general counsel, in which he says "I want to share my preliminary conclusions with you" and then lays out AmmoCore's purported claims against Cadence. *Id.*, at p. 6; Katsioulas Decl., Ex. C (it is not clear from Mr. Katsioulas' submission whether this document was actually sent). This document largely serves to underscore the difference between a (plainly) non-privileged demand letter and a (plainly) privileged client memorandum, which explicitly recites communications between the lawyer and his clients, including legal analysis and advice.

- The fourth and fifth items that Mr. Katsioulas cites as evidence that he and Mr. Lippe did not intend to waive the privilege by disseminating the Lippe Report are the emails that actually forwarded the Lippe Report to Cadence! Opposition, pp. 6-7; Katsioulas Decl., Exs. D & E. Mr. Katsioulas' reasoning makes no sense whatsoever, as it amounts to an argument that "because we waived the privilege by releasing this document to Cadence, it must be that we never meant to waive the privilege." Further, Mr. Lippe's November 16, 2006 email to Cadence's in-house lawyer contradicts Mr. Katsioulas' claim that it "demonstrates that [the Lippe Report] was *never* intended to be a confidential document." Opposition, p. 6 (emphasis added). Indeed, the email in question states that "[w]e *may* disclose this memo subsequently," and thus request "that this memo *remain confidential and privileged* in the context of a settlement discussion." Katsioulas Decl., Ex. D (emphases added).

6

Gibson, Dunn & Crutcher LLP

CADENCE DESIGN SYSTEM, INC.'S REPLY IN SUPPORT OF MOTION
TO COMPEL COMPLIANCE WITH SUBPOENAS                           Case No. C 07 80200-MISC SI

In sum, there is no factual basis for the only argument set forth in Mr. Katsioulas' opposition to Cadence's motion to compel. Not only do the documents Mr. Katsioulas rely on contradict his argument, but in addition, Mr. Lippe's declaration makes clear that he had the document marked "attorney client communication," and did not intend to assert any privilege over that attorney client communication. Lippe Decl., ¶ 11. For all of these reasons, and the reasons set forth in Cadence's motion to compel, it is plain that Mr. Lippe and his clients waived the privilege with respect to this document, and consequently, waived the privilege as to the entire subject matter of Mr. Lippe's investigation and analysis of AmmoCore's purported claims against Cadence.

**B.    If The Lippe Report Was Never Meant To Be Privileged, Then Katsioulas Is Abusing The Privilege By Trying To Use It As Both A "Sword" And A "Shield."**

As Cadence argued in its motion to compel, "the assertion of the attorney-client privilege by Mr. Katsioulas and the AmmoCore Board is precisely the type of 'sword and shield' abuse that is inconsistent with the very basis of the privilege." Motion to Compel, p. 12, *citing Chevron Corp. v. Pennzoil Co*., 974 F.2d 1156, 1162 (9th Cir. 1992); *In re Subpoenas Duces Tecum*, 738 F.2d 1367, 1370 (D.C. Cir. 1984). Mr. Katsioulas has neither responded to this argument, nor addressed (or even mentioned) the cases that were cited in Cadence's opening brief.

Indeed, to the extent Mr. Katsioulas' Opposition bears on this argument at all, it serves only to *underscore* the impropriety of the privilege asserted by the AmmoCore Board. Specifically, the documents submitted along with the Opposition admit that the purpose of sending the report to Cadence and others was to increase the pressure on Cadence to settle AmmoCore's purported claims. *E.g*., Katsioulas Decl., Exhs. D (forwarding Lippe Report "to clarify these issues in pursuit of a resolution of this matter," and threatening to send Lippe Report to the Federal Trade Commission) & E (threatening to send Lippe Report "to shareholders and others" in the context of attempting to force a settlement). Neither Mr. Katsioulas nor Mr. Lippe attempt to explain why the Lippe Report was described as "Attorney-Client Privileged" in an email to Cadence attaching the report, and on two versions of the report itself, if there never was an intention that the communication be privileged. To do so would admit that they indeed used the "Attorney-Client Privilege" label as a "sword" against Cadence.

7

Gibson, Dunn & Crutcher LLP

CADENCE DESIGN SYSTEM, INC.'S REPLY IN SUPPORT OF MOTION
TO COMPEL COMPLIANCE WITH SUBPOENAS                                    Case No. C 07 80200-MISC SI

1  Cadence argued that the AmmoCore Board's "use of a purportedly neutral report of an
2  'Attorney Client Investigation' (Sitzman Decl. Ex. 1, at p. 1) to pressure Cadence to settle claims is
3  wholly inconsistent with its later assertion of privilege regarding the communications and other
4  matters underlying that investigation and report."  Motion to Compel, p. 12, *citing Chevron Corp.*,
5  974 F.2d at 1162; *In re Subpoenas Duces Tecum*, 738 F.2d at 1370.  Because the AmmoCore Board
6  has not seen fit to respond to this argument, Cadence submits that the Court should consider the
7  argument conceded, and regardless of Mesrrs. Katsioulas' and Lippe's true intentions, their misuse of
8  the privilege constitutes a waiver.

### III.    CONCLUSION

For the foregoing reasons, and for the reasons stated in its opening brief, Cadence respectfully requests that the Court overrule the privilege and other objections raised by Perkins Coie and Mr. Lippe, and compel Perkins Coie and Mr. Lippe to comply with the outstanding subpoenas without objection on the basis of attorney-client privilege, work product, or settlement privilege.

DATED:  September 14, 2007

Respectfully submitted.

GIBSON, DUNN & CRUTCHER LLP

By: _____/s/_____
        Michael A. Sitzman

Attorneys for Plaintiff and Subpoenaing Party
CADENCE DESIGN SYSTEMS, INC.

100297743_1.DOC

Gibson, Dunn & Crutcher LLP

8

CADENCE DESIGN SYSTEM, INC.'S REPLY IN SUPPORT OF MOTION
TO COMPEL COMPLIANCE WITH SUBPOENAS                                    Case No. C 07 80200-MISC SI

# PROOF OF SERVICE

I, Pamela R. Saunders, declare as follows:

I am employed in the County of San Francisco, State of California; I am over the age of eighteen years and am not a party to this action; my business address is One Montgomery Street, San Francisco, California, 94104, in said County and State. On the date indicated below, I served the within:

**CADENCE DESIGN SYSTEMS, INC.'S REPLY MEMORANDUM IN SUPPORT OF MOTION TO COMPEL COMPLIANCE WITH SUBPOENA ISSUED TO PERKINS COIE LLP AND PAUL LIPPE**

by placing a true copy thereof in an envelope addressed to each of the persons named below at the address shown:

| | |
|---|---|
| Michael Himes | Paul Lippe |
| Perkins Coie LLP | Perkins Coie LLP |
| 1201 Third Avenue, Suite 4800 | 101 Jefferson Drive |
| Seattle, WA  98101-3099 | Menlo Park, CA  94025-1114 |
| Tel:    206.359.8000 | Tel:    650.838.4300 |
| Fax:   206.359.9000 | Fax:   650.838.4350 |

☐ **BY MAIL**: I placed a true copy in a sealed envelope addressed as indicated above, on the date shown below. I am familiar with the firm's practice of collection and processing correspondence for mailing. It is deposited with the U.S. Postal Service on that same day in the ordinary course of business. I am aware that on motion of party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

☒ **BY OVERNIGHT DELIVERY**: I placed a true copy in a sealed envelope addressed as indicated above, on the date shown below. I am familiar with Gibson, Dunn & Crutcher's practice in its above-described San Francisco office for the collection and processing of correspondence for distributing by Federal Express, UPS, and/or U.S. Postal Service Overnight Mail; pursuant to that practice, envelopes placed for collection at designated locations during designated hours are deposited at the respective office that same day in the ordinary course of business.

☐ **BY PERSONAL SERVICE** : I placed a true copy in a sealed envelope addressed to each person[s] named at the address[es] shown and giving same to a messenger for personal delivery before 5:00 p.m. on the date shown below; OR ☐ I personally served the document[s] by personally handing the sealed envelope[s] to each person[s] indicated above.

☐ **BY FACSIMILE**: From facsimile machine telephone number (415) 986-5309, on the date shown below, I caused to be served a full and complete copy of the above-referenced document[s] by facsimile transmission to the person[s] at the number[s] indicated.

I certify under penalty of perjury that the foregoing is true and correct, that the foregoing document(s) were printed on recycled paper, and that this Certificate of Service was executed by me on September 7, 2007, at San Francisco, California.

/s/
Pamela R. Saunders

Gibson, Dunn & Crutcher LLP